UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**CHIMKAMA IBE,**

    Plaintiff,

    v.                                                           Case No. 24-CV-388-SCD

**JOSEPH NANTOMAH and**
**INVESTORS CAPITAL LLC,**

    Defendants.

---

## DECISION AND ORDER
## ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

---

    Chimkama Ibe lost substantial sums of money investing in what turned out to be a Ponzi scheme orchestrated by Joseph Nantomah and his investment company, Investors Capital LLC. After Nantomah failed to pay back Ibe's investment or her promised return, Ibe sued Nantomah and his LLC in federal court, asserting claims for breach of contract, civil theft, deceptive trade practices, and violations of state and federal securities laws. Ibe has moved for summary judgment on all but one of her claims. The defendants' lack of response to Ibe's motion—and general non-involvement in this and other, similar actions—appears to be a tacit admission of deceit. Likewise, the undisputed facts in this case demonstrate that Ibe is entitled to summary judgment on nearly all her claims.

## BACKGROUND

    In accordance with local rules, *see* E.D. Wis. Civ. L. R. 56(b)(1)(C), Ibe filed a statement of proposed facts along with her summary judgment motion, *see* Pl.'s Facts, ECF No. 25. I reminded the defendants that they needed to respond to Ibe's proposed facts, *see*

Notice & Order, ECF No. 30 (citing E.D. Wis. Civ. L. R. 56(b)(2)), but they never did.[1] Thus, I will deem Ibe's uncontroverted facts admitted for the purpose of deciding summary judgment. *See* E.D. Wis. Civ. L. R. 56(b)(4).

Nantomah claims to be a successful entrepreneur and real estate investor. On social media, he regularly posted videos and images of luxury cars, large homes, and lavish vacations and suggested he could help others get rich quick, too, if only they invested in his highly successful real estate business. Nantomah claimed that he had successfully "flipped" hundreds of properties, that he had made millions of dollars in profit, and that he had a real estate portfolio valued at more than $20 million. He invited others to join in on the wealth and promised quick returns with little risk. *See* Pl.'s Facts ¶¶ 8–15; *see also* Goodhart Decl., Ex. G, ECF No. 26-7; Goodhart Decl., Ex. H, ECF No. 26-8; Goodhart Decl., Ex. J, ECF No. 26-10.

After seeing Nantomah boast on social media, Ibe decided to get in on the action. In May 2023, she entered into an investment agreement with Nantomah's investment company, Investors Capital LLC, which guaranteed a 10% return within eight months. Pl.'s Facts ¶¶ 8, 12, 14, 16. Nantomah told Ibe that the investment would be used solely for rehabbing and flipping a property located in Slinger, Wisconsin. *Id.* ¶ 17. Ibe invested $100,000. *Id.* ¶ 18. According to the agreement, Ibe was due $110,000 (her investment plus the guaranteed 10% return) by January 2, 2024. *Id.* ¶ 24; *see also* Ibe Aff., Ex. A, ECF No. 27-1.

A few months later, Nantomah presented Ibe an even better investment opportunity—a guaranteed 20% return within ninety days. *See* Pl.'s Facts ¶¶ 19–20. Nantomah told Ibe that

---

[1] Ibe was also supposed to remind Nantomah about the local rules and attach a copy of the relevant rules to her motion. *See* E.D. Wis. Civ. L. R. 56(a). I pointed out those requirements to Ibe, *see* Text Only Order, ECF No. 28, but she still didn't comply.

the second investment property had already been purchased and that it needed only minor renovations. *Id.* ¶ 21. He also told Ibe that the additional funds would be used exclusively for that property and would not be diverted elsewhere. *Id.* ¶ 22. Ibe invested another $15,000. *Id.* ¶ 23. According to the second investment agreement, Ibe was due $18,000 (her investment plus the guaranteed 20% return) by October 17, 2023. *Id.* ¶ 25.

Nantomah's promises proved too good to be true. He didn't make any payments by the agreed-upon deadlines. Pl.'s Facts ¶ 26. When Ibe demanded that he pay up, Nantomah simply made excuses, claiming that he was working with his bank to process payments, he had unexpected delays but would pay soon, and he was in the process of closing a big deal. *Id.* ¶¶ 17–28. Ibe, however, still hasn't received any of the $128,000 owed. *Id.* ¶ 29.

In March 2024, Ibe sued Nantomah and Investors Capital LLC in federal court, asserting claims for breach of contract, civil theft, deceptive trade practices, the sale of an unregistered security under Wisconsin law, a misstatement or omission in the sale of a security, the sale of unregistered securities under federal law, and federal securities fraud. *See* Compl., ECF No. 1. The matter was randomly assigned to this court, and all parties consented to the jurisdiction of a magistrate judge under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b). *See* ECF Nos. 6 & 8. The defendants responded to the complaint, *see* Answer, ECF No. 10, and the parties engaged in discovery. In April 2025, I granted defense counsel's motion to withdraw from the case. *See* Minute Order, ECF No. 21. I haven't heard from either defendant since then.

On June 16, 2025, Ibe moved for summary judgment. *See* Pl.'s Mot. for Summ. J., ECF No. 23; Pl.'s Br. in Supp., ECF No. 24. Because the defendants did not have a lawyer, I attempted to explain to them the process and deadline for responding to Ibe's motion. *See*

Notice & Order. That filing, however, was returned as undeliverable as to both defendants. *See* ECF Nos. 31 & 33. Local rules require pro se litigants to provide the court their address and telephone number. *See* E.D. Wis. Gen. L. R. 5(a)(4). Nantomah has not provided an updated address, and the defendants have not responded to Ibe's summary judgment motion.[2]

## SUMMARY JUDGMENT STANDARD

Ibe moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Under Rule 56, "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Fed. R. Civ. P. 56(a) "Summary judgment is appropriate 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Marnocha v. St. Vincent Hosp. & Health Care Ctr., Inc.*, 986 F.3d 711, 718 (7th Cir. 2021) (quoting Fed. R. Civ. P. 56(a)). "A genuine dispute of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* (quoting *Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018)).

## DISCUSSION

Ibe moves for summary judgment on six of the seven claims asserted in the complaint: (I) breach of contract under common law; (II) civil theft under section 895.446 of the Wisconsin statutes; (III) deceptive trade practices under section 100.18 of the Wisconsin statutes; (IV) the sale of an unregistered security under section 551.301 of the Wisconsin statutes; (V) a misstatement or omission in the sale of a security under section 551.501 of the

---

[2] While drafting this decision, I noticed that Nantomah recently provided an updated address in the fraud action the U.S. Securities and Exchange Commission filed against him and his companies in August 2025. *See* Case No. 25-cv-1130-PP. Nantomah also acknowledged facing other civil suits, and he has personally participated in a telephone conference in this action. Given his awareness of this lawsuit, Nantomah's lack of response appears deliberate and not due to any issues with mailing.

Wisconsin statutes; and (VI) the sale of an unregistered security under section 12(a)(1) of the Securities Act of 1933.

## I. Ibe Is Entitled to Partial Summary Judgment on Her Breach of Contract Claim

Wisconsin substantive law applies to this diversity action.[3] *See Milwaukee Ctr. for Indep., Inc. v. Milwaukee Health Care, LLC*, 929 F.3d 489, 493 (7th Cir. 2019) (*citing Med. Protective Co. of Fort Wayne v. Am. Int'l Specialty Lines Ins. Co.*, 911 F.3d 438, 445 (7th Cir. 2018)). To prevail on a breach of contract claim under Wisconsin law, Ibe must establish "(1) the existence of a contract; (2) a breach of the contract; and (3) damages from the breach." *Gallo v. Mayo Clinic Health Sys.-Franciscan Med. Ctr., Inc.*, 907 F.3d 961, 965 (7th Cir. 2018) (citing *Matthews v. Wis. Energy Corp. Inc.*, 534 F.3d 547, 553 (7th Cir. 2008)). "Under Wisconsin law, an enforceable contract has three elements: offer, acceptance, and consideration." *C.G. Schmidt, Inc. v. Permasteelisa N. Am.*, 825 F.3d 801, 805 (7th Cir. 2016) (citing *Runzheimer Int'l, Ltd. v. Friedlen*, 2015 WI 45, ¶ 20, 862 N.W.2d 879, 885).

Ibe is entitled to summary judgment on her claim that Investors Capital LLC breached the May 2023 investment agreement.[4] First, the undisputed facts establish the existence of a contract. Although the written investment agreement is not signed, *see* Ibe Aff., Ex. A, at 6, the defendants admitted in their answer and their discovery responses that Investors Capital LLC (through its member, Nantomah) entered into an investment agreement with Ibe on May 29, 2023, whereby the LLC promised a 10% return on Ibe's $100,000 investment within eight

---

[3] It is undisputed that Ibe is a citizen of Texas, that the defendants are citizens of Wisconsin, and that the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. *See* Answer ¶¶ 1–4. Thus, subject matter jurisdiction is secure. *See* 28 U.S.C. § 1332.

[4] Although Nantomah is a member of Investors Capital LLC, *see* Answer ¶ 3, he is not a party to the investment agreement, *see* Ibe Aff., Ex. A, at 1. Accordingly, I will deny Ibe's motion to the extent she seeks to hold Nantomah personally liable for breach of contract.

months, and that Ibe made the $100,000 investment. *See* Answer ¶¶ 8–9, 12–14; Goodhart Decl., Ex. F, at 4–5, 10, ECF No. 26-6. Second, the undisputed facts establish that Investors Capital breached the May 2023 investment agreement, as the defendants admitted that the LLC did not pay back the investment or the promised return as specified in the agreement. *See* Answer ¶ 18; Ex. F, at 11. Finally, the undisputed facts establish that Ibe was damaged by the breach—she's out $110,000. *See* Pl.'s Facts ¶¶ 18, 24, 29.

Ibe, however, is not entitled to summary judgment on her claim that the defendants breached a second investment agreement. Ibe says that she and Nantomah entered into a second investment agreement in July 2023 via the WhatsApp messenger application. *See* Pl.'s Facts ¶¶ 19–23, 25. She attached a copy of those messages to her affidavit. *See* Ibe Aff., Ex. B, ECF No. 27-2. On some unknown date, Ibe purportedly sent Nantomah a receipt documenting a $15,000 wire transfer on July 19, 2023, but the receipt doesn't say what the money was for. *See* Ibe Aff., Ex. B, at 2. Later, that same individual tells Nantomah that she paid him "$15k in July for a land deal that was meant to be 90 days with a 20% ROI." *Id.* at 8. But nowhere in the message chain does Nantomah agree those were the terms of a second investment deal. The WhatsApp messages therefore do not show mutual assent between the parties. Moreover, unlike for the May 2023 investment agreement, in their answer and their discovery responses, the defendants denied that there was a second investment agreement. *See* Answer ¶¶ 15–17, 20; Ex. F, at 10–12. Because the undisputed facts do not establish the existence a second investment agreement, Ibe is not entitled to summary judgment on that portion of her breach of contract claim. *See* Compl. ¶¶ 27–32.

6

## II.   Ibe Is Entitled to Summary Judgment on Her Civil Theft Claim

In Wisconsin, "[a]ny person who suffers damage or loss by reason of intentional conduct that occurs on or after November 1, 1995, and that is prohibited under s. . . . 943.20 . . . has a cause of action against the person who caused the damage or loss." Wis. Stat. § 895.446(1). "Section 943.20 defines five modes of committing theft." *State v. Lopez*, 2019 WI 101, ¶ 17, 936 N.W.2d 125, 129. Here, Ibe asserts a claim of civil theft under the second mode: theft of money by one in possession. *See* Pl.'s Br. 7–9 (citing Wis. Stat. § 943.20(1)(b)).

To prevail on her civil theft claim, Ibe must prove, by a preponderance of the credible evidence, four elements. *See* Wis. Stat. § 895.446(2); § 943.20(1)(b); Wis. JI—Criminal 1444. First, Ibe must show that the defendants had possession or custody of her money by virtue of the defendants' office, business, or employment or as trustee or bailee. Second, Ibe must show that the defendants intentionally used or retained possession of the money without Ibe's consent and contrary to the defendants' authority. "The term 'intentionally' means that the defendant[s] must have had the mental purpose to use the money without [Ibe's] consent and contrary to the defendant[s'] authority." Wis. JI—Criminal 1444. Third, Ibe must show that the defendants knew that the use or retention of the money was without Ibe's consent and contrary to the defendants' authority. Fourth, and finally, Ibe must show that the defendants intended to convert the money to their own use. "Knowledge and intent must be found, if found at all, from the defendant[s'] acts, words, and statements, if any, and from all the facts and circumstances in this case bearing upon knowledge and intent." *Id.*

"Under Wisconsin law, . . . civil theft require[s] the victim to have an ownership interest in the property . . . stolen." *Milwaukee Ctr. for Indep.*, 929 F.3d at 494 (citing § 895.446(1); § 943.20(1)(b); *H.A. Friend & Co. v. Pro. Stationery, Inc.*, 2006 WI App 141, ¶ 11,

7

720 N.W.2d 96, 100). "[T]he distinction between a debt and property is . . . critical in deciding whether" a defendant has committed civil theft. *Kentuckiana Healthcare, Inc. v. Fourth St. Sols., LLC*, 517 F.3d 446, 447 (7th Cir. 2008) (citations omitted). "If you simply owe someone money and fail to pay it, you have broken a contract but you have not taken your creditor's property." *Id.* However, an agreement that entitles someone to specific funds—rather than a "generic right to payment"—can create an ownership interest. *See Milwaukee Ctr. for Indep.*, 929 F.3d at 494–95.

The undisputed facts show that Ibe had an ownership interest in her investment funds. The investment agreement did not create a simple debtor-creditor relationship between Investors Capital LLC and Ibe. Rather, the agreement established a partnership whereby Ibe invested in the renovation of a specific property in exchange for a share of profits from the post-renovation sale of that property. The agreement describes Investors Capital as the "property manager" and Ibe as the "investor" and indicates that the company "is willing to enter partnership" with qualified individuals. Ibe Aff., Ex. A, at 1. Furthermore, Investors Capital and Ibe "covenanted to work together to mutually benefit them," and Investors Capital agreed to "source, inspect, [and] acquire" an investment property "on behalf of the investor," acquire property "that befits the investment fund," and "commence partnership with the investor for the sum of $100,000.00 only for the fixing and flip of property located at 3985 Fairfield Road, Slinger WI 53086." *Id.* at 2. The signature line of the agreement also lists the parties as co-investors. *See id.* at 6. Given the plain terms of the investment agreement, Ibe retained an ownership interest in her investment funds, and Investors Capital had custody of that money as a trustee.

The presence of a contract between Investors Capital LLC and Ibe does not bar holding the defendants liable for civil theft. "The existence of a contract does not, in itself, bar claims for civil theft." *Senior Opportunity Fund Operations-I LLC v. Assisted Living by Hillcrest, LLC*, No. 22-C-1008, 2023 WL 2837708, 2023 U.S. Dist. LEXIS 61449, at *11 (E.D. Wis. Apr. 7, 2023) (citing *H. A. Friend & Co.*, 2006 WI App 141, ¶ 17, 720 N.W.2d at 102). "Indeed, Wis. Stat. § 943.20(1)(b) is intended to specifically target those who 'are entrusted with the property of another and who retain or use that property in a way that does not comport with the owner's wishes.'" *Id.* (quoting *Aslanukov v. Am. Express Travel Related Servs. Co.*, 426 F. Supp. 2d 888, 893 (W.D. Wis. 2006)). Thus, a cause of action for civil theft coexists with a breach of contract claim if the contract "*create[s] the state of things* which furnishes the occasion of [the theft]" but does not "create 'the underlying duty for [it].'" *Milwaukee Ctr. for Indep.*, 929 F.3d at 496 (quoting *Landwehr v. Citizens Trust Co.*, 329 N.W.2d 411, 414 (Wis. 1983)).

Here, while Investors Capital LLC had custody of Ibe's investment funds pursuant to the investment agreement, *see* Ex. F, at 11, the company had an independent duty to refrain from retaining or using those funds without Ibe's consent or authorization, *see Milwaukee Ctr. for Indep.*, 929 F.3d at 496–97 ("The duty to refrain from . . . stealing the BIRC Collections was entirely independent of the contract. It arose from the common law and Wisconsin statutes."). Ibe consented to Investors Capital using her investment funds to renovate the Slinger property. *See* Ibe Aff., Ex. A, at 2. However, she did not consent to the company retaining possession of her funds beyond the repayment deadline or to Nantomah using the funds for personal expenses and unrelated ventures. *See* Pl.'s Facts ¶¶ 26–29, 42. The undisputed facts therefore show that the defendants retained possession of and used Ibe's money without her consent and contrary to the defendants' authority. *Cf. Bich v. WW3 LLC*,

9

No. 20-C-1016, 2022 WL 18025219, 2022 U.S. Dist. LEXIS 233542, at *33–34 (E.D. Wis. Dec. 30, 2022) (dismissing a civil theft claim because the plaintiffs voluntarily loaned their money to the defendants and failed to allege that the defendants used that money for a purpose other than what they intended).

To prevail on her civil theft claim, Ibe must also prove by a preponderance of the evidence that the defendants *knowingly* retained possession of or used the investment funds without Ibe's consent, contrary to the defendants' authority, and with intent to convert those funds for their own use. *Tri-Tech Corp. of Am. v. Americomp Servs.*, 646 N.W.2d 822, 827–29 (Wis. 2002). "[T]he issue of intent is generally not readily susceptible of determination on summary judgment." *Id.* at 829 n.5. Some cases, however, contain "unrebutted evidence that the defendants acted with the requisite intent." *Raab v. Wendel*, No. 16-CV-1396, 2019 WL 1060856, 2019 U.S. Dist. LEXIS 35843, at *38 (E.D. Wis. Mar. 6, 2019) (citing *In re Kontrick*, 295 F.3d 724, 737 (7th Cir. 2002)). In fact, Wisconsin's theft statute "sets forth one acceptable method of proof: a defendant's refusal to pay a claim upon demand to one entitled to be paid out of trust funds is prima facie evidence of the defendant's intent to convert the trust funds to his own use." *Tri-Tech Corp.*, 646 N.W.2d at 829 (citing § 943.20(1)(b)).

Ibe has presented prima facie evidence that the defendants in this case acted with specific criminal intent. Between January 2024 and the filing of the summary judgment motion in June 2025, Ibe repeatedly contacted Nantomah via phone, email, and WhatsApp demanding payment. Pl.'s Facts. ¶ 27. However, Nantomah simply made excuses and never paid back Ibe's investment or the promised return. *Id.* ¶¶ 28–29; *see also* Ex. F, at 11. Nantomah instead used Ibe's investment to fund his personal lifestyle and unrelated ventures. *See* Ibe Aff.

10

¶ 19(b). Those uncontroverted facts are sufficient to establish the intent element of Wisconsin's criminal theft statute.

Because Ibe has satisfied her burden on each element of section 943.20(1)(b), she is entitled to summary judgment on her civil theft claim under section 895.446.

**III.   Ibe Is Entitled to Summary Judgment on Her Deceptive Trade Practices Claim**

Wisconsin's Deceptive Trade Practices Act "generally prohibits false, deceptive, or misleading representations or statements of fact in public advertisements or sales announcements." *Weaver v. Champion Petfoods USA Inc.*, 3 F.4th 927, 934 (7th Cir. 2021) (quoting *Tietsworth v. Harley-Davidson, Inc.*, 2004 WI 32, ¶ 38, 677 N.W.2d 233, 244). To prevail on a claim under the Act, Ibe must prove three elements: "(1) the defendant made a representation to the public with the intent to induce an obligation, (2) the representation was untrue, deceptive or misleading, and (3) the representation materially induced (caused) a pecuniary loss to the plaintiff." *Id.* (quoting *Novell v. Migliaccio*, 2008 WI 44, ¶ 44, 749 N.W.2d 544, 553); *see also* § 100.18(1); Wis. JI—Civil 2418A.

The undisputed facts show that the defendants made a representation to the public with the intent to induce an obligation. Specifically, Nantomah actively promoted himself on social media as an experienced real estate investor and house flipper, claiming that he and his investment company, Investors Capital LLC, had an investment portfolio worth over $20 million. *See* Pl.'s Facts ¶¶ 8–10; *see also* Ex. G; Ex. H. Those posts encouraged others to "take action" and "co invest" with Nantomah and his company. In another social media post, Nantomah claimed that he had a property "on contract" for $665,000. *See* Ex. J. Nantomah said that, after repairing the property, he expected to profit $131,000, and he urged others to "DM" him or email the LLC to get in on "this amazing deal." *Id.*

11

The undisputed facts also show that several of Nantomah's public representations were untrue, deceptive, or misleading. Nantomah significantly inflated the value of his investment portfolio. While he claimed to have real estate holdings worth over $20 million, in responding to Ibe's requests for discovery, Nantomah listed only six properties held by his investment companies, which had a total value just over $650,000. *See* Ex. F, at 8–9; Goodhart Decl., Ex. I, ECF No. 26-9; *see also* Pl.'s Facts ¶ 5. In fact, Nantomah admitted in a similar lawsuit that, prior to 2023, his assets did not exceed $1 million. *See* Goodhart Decl., Ex. L, at 270:19–277:17, ECF No. 26-12; *see also* Pl.'s Facts ¶¶ 6–7. Nantomah's statements about the value of his real estate portfolio were not simple exaggerations. *See Tietsworth*, 2004 WI 32, ¶ 41, 677 N.W.2d at 245 ("Puffery has been defined as the exaggerations reasonably to be expected of a seller as to the degree of quality of his product, the truth or falsity of which cannot be precisely determined.") (citation and internal quotation marks omitted). Rather, given their context, those statements appear designed to mislead potential investors into believing Nantomah was an experienced and highly successful real estate investor and house flipper.

The other potential misrepresentations identified by Ibe are not supported by the evidence she cites, however. Ibe asserts that Nantomah furthered his deception by showing her videos of the Slinger property and by falsely representing that property as an investment opportunity owned by himself and Investors Capital LLC. Ibe, however, doesn't cite any evidence to support her assertion that Nantomah showed her videos of the Slinger property, *see* Pl.'s Br. 11, and she doesn't mention those videos anywhere in her proposed facts or other supporting materials. Ibe also fails to cite any evidence establishing that Nantomah lied about the properties he owned. She says that discovery records and tax bills "definitely prove" that the defendants never owned the Slinger property. Pl.'s Br. 11. But Ibe doesn't cite to any

12

specific discovery responses,[5] and the tax bills she cites indicate that in 2023 (the year of Nantomah's social media post) the Slinger property was owned by "Collison Rev Trust," Goodhart Decl., Ex. K, at 3, ECF No. 26-11. That tax bill is far from definitive; for all we know, the trust could be controlled by Nantomah or one of his companies or an associate or co-investor. Ibe provides no other evidence to suggest—let alone prove by a preponderance of the evidence—that Nantomah did not own the Slinger property, as he implied on social media.

That leaves the final element: whether Nantomah's statements materially induced a pecuniary loss to Ibe. Wisconsin courts have endorsed "an expansive definition of pecuniary loss." *Tietsworth v. Harley-Davidson, Inc.*, 2003 WI App 75, ¶ 24, 661 N.W.2d 450, 455, *rev'd on other grounds*, 2004 WI 32, ¶¶ 38–45, 677 N.W.2d at 244–46; *Mueller v. Harry Kaufmann Motorcars, Inc.*, 2015 WI App 8, ¶¶ 19–29, 859 N.W.2d 451, 458–60.

> In determining whether a plaintiff's loss was caused by the representation, the test is whether the plaintiff would have acted in its absence. Although the representation need not be the sole or only motivation for the plaintiff's decision to enter the contract, it must have been a material inducement. That is, the representation must have been a significant factor contributing to the plaintiff's decision.

Wis. JI—Civil 2418A (cleaned up and tailored to this case).

The undisputed facts show that Ibe sustained a monetary loss as a result of Nantomah's misrepresentations about his investment portfolio. Ibe asserts that she entered into the investment agreement with Investors Capital LLC in reliance on Nantomah's representations, including his social media posts about his success in real estate. *See* Pl.'s Facts

---

[5] It's true that Nantomah didn't list the Slinger property as ever being owned by his companies. *See* Ex. F, at 8–9. However, when asked in September 2024 to identify the real estate properties held in his own name, Nantomah simply said, "None currently." *Id.* at 9, 21.

13

¶¶ 8–16. Those uncontested facts demonstrate that Nantomah's misrepresentations materially induced Ibe to invest in the defendants' real estate ventures. And that action resulted in Ibe's monetary loss.

Because Ibe has satisfied her burden on each element of section 100.18, she is entitled to summary judgment on her deceptive trade practices claim.

## IV.     Ibe Is Entitled to Summary Judgment on Her State Unregistered Security Claim

"In Wisconsin, it is unlawful for a person to offer or sell a security unless it is a federally covered security, registered, or exempt from registration." *Toshner v. Goodman*, No. 18-cv-2005-bhl, 2024 WL 473616, 2024 U.S. Dist. LEXIS 21217, at *24 (E.D. Wis. Feb. 7, 2024) (citing Wis. Stat. § 551.301). "If the sale of a security violates Section 551.301, the purchaser may sue 'to recover the consideration paid for the security' after subtracting any income received and the legal rate of interest." *Id.* (quoting Wis. Stat. § 551.509(2)(a)). The purchaser can also recover costs and attorney fees. *See* § 551.509(2)(a).

The Wisconsin Uniform Securities Act "provides an extensive definition of 'security.'" *State v. Hudson*, 2013 WI App 120, ¶ 4, 839 N.W.2d 147, 151 (quoting Wis. JI—Criminal 2904, cmt. 1). Under the Act, an "investment contract" is a "security." Wis. Stat. § 551.102(28). More specifically, a "security" includes "[a]n investment in a common enterprise with the expectation of profits to be derived through the essential managerial efforts of someone other than the investor." Wis. Stat. § 551.102(28)(d)(1). The Act defines a "common enterprise" as "an enterprise in which the fortunes of the investor are tied to the efficacy of the efforts of those seeking the investment or a third party." *Id.*

The investment opportunity the defendants offered and sold to Ibe qualifies as a security under Wisconsin law. According to the agreement, the defendants offered Ibe an

opportunity to contribute money to an investment fund involving flipping a specific real estate property for a profit and promised a high rate of return. *See* Ibe Aff., Ex. A. The defendants' promises induced Ibe to invest $100,000, and her fortunes in that investment fund were tied to the efficacy of Nantomah's efforts in acquiring, renovating, and reselling the property. Thus, the investment offering constitutes an investment in a common enterprise under Wisconsin securities law. *See, e.g.*, *State v. Johnson*, 2002 WI App 224, ¶¶ 10–19, 652 N.W.2d 642, 645–48 (finding that an investment offering qualified as a security under Wisconsin law where a defendant solicited loans for his business and promised a high rate of return).

The undisputed facts show that the investment opportunity the defendants offered and sold to Ibe was not registered under Wisconsin law, and there's no evidence to suggest that the agreement was a federally covered security or was exempt from registration. In their answer and their discovery responses, the defendants admitted that the investment agreement was not registered with the SEC or any state regulatory agency. *See* Answer ¶ 62; Ex. F, at 13. Because the agreement was unregistered, to avoid liability under section 551.301, the defendants must prove that the agreement was exempt from registration. *See State v. Torgerson*, No. 2016AP411-CR, 2017 WL 3037549, 2017 Wisc. App. LEXIS 530, at *9–10 (Wis. Ct. App. July 18, 2017). The defendants have never claimed that the agreement was exempt from registration under Wisconsin securities law. *See* Pl.'s Facts ¶¶ 32, 36. And the defendants have not responded to Ibe's motion or proposed facts.

Because Ibe has proven that the defendants offered and sold her an unregistered security, and because there's no evidence the security was federally covered or exempt from registration, Ibe is entitled to summary judgment on her unregistered securities claim under the Wisconsin Uniform Securities Act.

15

## V. Ibe Is Entitled to Summary Judgment on Her State Securities Fraud Claim

"Section 551.501 makes it unlawful for a person, in connection with the offer, sale, or purchase of a security to 'make an untrue statement of a material fact,' or to omit a material fact that would have made a statement not misleading." *Toshner*, 2024 U.S. Dist. LEXIS 21217, at *30 (quoting Wis. Stat. § 551.501(2)). If the sale of a security violates section 551.501(2), the seller is liable to the purchaser if "the purchaser did not know the untruth or omission and the seller cannot sustain the burden of proof that the seller did not know and, in the exercise of reasonable care, could not have known of the untruth or omission." Wis. Stat. § 551.509(2). The purchaser, however, does not need to prove that the seller intended to defraud. *See Toshner*, 2024 U.S. Dist. LEXIS 21217, at *30 (citing *In re Butler*, No. 17-22141-svk, 2017 WL 5151678, 2017 Bankr. LEXIS 3835, at *19–20 (Bankr. E.D. Wis. Nov. 6, 2017)).

Ibe is entitled to summary judgment on her state securities fraud claim. The undisputed facts show that the defendants, in connection with the offer and sale of the investment opportunity, willfully made untrue statements about the value of their real estate portfolio. Those statements were material, as the value of the overall investment portfolio could be expected to influence a reasonable investor in deciding to invest, and Ibe says it did. *See* Pl.'s Facts ¶¶ 8–16. Ibe did not know that the defendants had significantly inflated the value of their real estate holdings, and if she had, she would not have invested. *See* Ibe Aff. ¶¶ 6–8, 19, 34, 39. Together, the defendants' discovery responses (*see* Ex. F, at 8–9), information Ibe learned from her own investigation (*see* Ex. I), and Nantomah's sworn testimony about his wealth (*see* Ex. L, at 270:19–277:17) demonstrate that the defendants knew or should have known that their statements about their real estate portfolio were untrue.

16

## VI. Ibe Is Not Entitled to Summary Judgment on Her Federal Unregistered Securities Claim

Section 5 of the Securities Act of 1933 "provides that no securities may be sold in or by means of interstate commerce unless a registration statement is in effect or some exemption applies." *United States v. Spirk*, 503 F.3d 619, 620 (7th Cir. 2007) (citing 15 U.S.C. § 77e). Just as in Wisconsin, an "investment contract" constitutes a "security" under the federal Securities Act. *See* 15 U.S.C. § 77b(a)(1). Also like Wisconsin law, federal law defines an investment contract as "a contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party." *Stenger v. R.H. Love Galleries, Inc.*, 741 F.2d 144, 146 (7th Cir. 1984) (quoting *S.E.C. v. Howey Co.*, 328 U.S. 293, 299 (1946)). However, the federal Securities Act deviates from the Wisconsin Uniform Securities Act in one key respect, at least as the federal Act has been interpreted by the Seventh Circuit. "This Circuit has strictly adhered to a 'horizontal' test of common enterprise, under which multiple investors must pool their investments and receive pro rata profits." *Id.* (citing *Hirk v. Agri-Rsch. Council, Inc.*, 561 F.2d 96 (7th Cir. 1977); *Milnarik v. M-S Commodities, Inc.*, 457 F.2d 274 (7th Cir. 1972)); *cf. Johnson*, 2002 WI App 224, ¶ 17, 652 N.W.2d at 647 (explaining that "proof of horizontal commonality is not required in order to have the solicitation to loan money involve a security within the meaning of ch. 551").

Ibe has failed to prove that the investment opportunity Nantomah offered to her constitutes a security under federal law. She does not provide any facts suggesting that multiple investors pooled their funds or were entitled to receive profits. In fact, she identifies only one person who invested in this specific investment opportunity—herself. *See* Pl.'s Facts ¶¶ 1–42; Ibe Aff., Ex. A. Because Ibe has failed to demonstrate that the investment agreement involved a common enterprise, she is not entitled to summary judgment on her unregistered securities

17

claim under the Securities Act of 1933. *See Goldberg v. 401 North Wabash Venture LLC*, 755 F.3d 456, 465 (7th Cir. 2014) (affirming summary judgment in favor of defendants because the plaintiffs failed to show that a purchase agreement involved a common enterprise); *Okeke v. Nantomah*, No. 25-cv-36-pp, 2025 WL 2494024, 2025 U.S. Dist. LEXIS 168717, *16–18 (E.D. Wis. Aug. 29, 2025) (denying default judgment on unregistered securities claim under federal law because the complaint failed to allege that any other investors—beside the plaintiff—contributed funds or were entitled to receive profits).

## CONCLUSION

Ibe lost over $100,000 investing in Nantomah's Ponzi scheme, and the undisputed facts in this action demonstrate that Nantomah and his LLC are on the hook for that money under several theories of liability. Accordingly, for all the foregoing reasons, the court **GRANTS in part** and **DENIES in part** the plaintiff's motion for summary judgment, ECF No. 23. Ibe is entitled to summary judgment on her breach of contract claim against Investors Capital LLC, her civil theft claim, her deceptive trade practices claim, her state unregistered security claim, and her state securities fraud claim. However, Ibe is not entitled to summary judgment on her breach of contract claim against Nantomah or her federal unregistered securities claim.

**SO ORDERED** this 14th day of November, 2025.

STEPHEN C. DRIES
United States Magistrate Judge